IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Ramon Collazo,
    Plaintiff,

v.

R. James Nicholson, et al.,
    Defendants.

Civil No. 05-1783 (GAG)

**OPINION AND ORDER**

On July 14, 2005, the plaintiff, Ramon Collazo ("Collazo"), commenced this action against his employer, R. James Nicholson, Secretary, Department of Veterans Affairs ("VA"), alleging a hostile work environment in violation of the Age Discrimination in Employment Act ("ADEA"). Presently before the court is the defendant's motion for summary judgment (Docket No. 8) which the plaintiff opposed (Docket No. 15). After reviewing the relevant facts and applicable law, the court **GRANTS** defendant's motion for summary judgment.

**I.    Summary Judgment Standard & Local Antiferriting Rule**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In order to defeat summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e). The court must view the record in the light most favorable to the party opposing summary judgment and draw all reasonable inferences in the nonmovant's favor. See id. The court must deny the motion if it finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986).

To aid the court in the task of identifying genuine issues of material fact, the United States District Court for the District of Puerto Rico has adopted Local Rule 56. Local Rule 56(b) requires the moving party to file, annexed to its motion, "a separate, short and concise statement of material

facts . . . as to which the moving party contends there is no genuine issue of material fact to be tried." Local Rule 56(b).  The movant must support each statement with a citation to the record. See id.  The nonmoving party must then submit with its opposition "a separate, short, and concise statement of statement of material facts, " admitting, denying or qualifying the moving party's facts by reference to each numbered paragraph of the moving party's statement of material facts.  See Local Rule 56(c).  Moreover, the nonmoving party must support each denial or qualification with a record citation.  See id.  The VA complied with Local Rule 56(b).  See Docket No. 10.  Collazo, however, did not comply with Local Rule 56(c).  He failed to specifically refer to each numbered paragraph in the VA's statement of uncontested facts and to support each fact with a proper record citation.  See Docket No. 17.  Collazo's failures have hampered the court's effort to determine what factual disputes exist. Nevertheless, the court has endeavored to treat as undisputed only those facts included in the VA's brief which Collazo does not contest and those facts presented by Collazo that do not conflict with the VA's recitation and include proper record citations.

**II.     Relevant Factual & Procedural Background**

The parties' statements of material facts, credited only to the extent either admitted or properly supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to Collazo, reveal the following undisputed material facts:

On April 16, 1995, the VA appointed Collazo to the position of Program Support Clerk in the Medical Administration Service of the San Juan VA Medical Center.  The VA reassigned Collazo to the position of File Clerk on November 10, 1996.  On April 16, 1997, while Collazo held the File Clerk position, the VA converted him to a career conditional appointment.  In accordance with an Equal Employment Opportunity ("EEO") Settlement Agreement effective February 4, 1998, the VA transferred Collazo the position of Medical Clerk in the Ambulatory Care Specialty Clinic.  The VA later promoted Collazo to the position of Patient Services Assistant on August 2, 1998, as a result of his selection from a Merit Promotion Announcement.  See Docket No. 10, ¶¶ 1-3, 5.

Upon Collazo's transfer Medical Clerk, Jose Rivera ("Rivera") became his supervisor.  See id. at ¶ 6.  Collazo contends that he received successful performance evaluations and no allegations

**Civil No. 05-1783 (GAG)**                                3

of patient abuse were raised while he worked under Rivera. See Docket No. 17, ¶ 9. He also alleges that Rivera's behavior toward him eventually became hostile and threatening. Collazo contends that Rivera directed nasty remarks to him during meetings, repeatedly called him "old man," and constantly mistreated him. See id. at ¶¶ 10-11.

Two of Collazo's co-workers and a patient witnessed Rivera's treatment of Collazo. A co-worker, Edwin Pantojas, heard Rivera call Collazo a useless old man, use foul language towards Collazo in an aggressive fashion, and address Collazo disrespectfully. He witnessed Rivera make nasty remarks to Collazo and challenge him to fight. See id. at ¶¶ 10, 12. Brunilda Ayala, another co-worker, witnessed Rivera refer to Collazo as an old man. She also heard Rivera use foul language against Collazo. See id. at ¶ 18. Antonio Tirado, a former VA patient, witnessed Rivera call Collazo old man and tell him that he should leave. See id. at ¶ 13.

On four occasions, Collazo filed reports regarding his encounters with Rivera. On March 25, 2002, Collazo filed a complaint with VA Police Service alleging that Rivera had threatened him on March 18, 2002. Collazo told the VA Police Service that Rivera had threatened to inflict bodily harm on him off the Medical Center premises. See Docket No. 10, ¶ 9. Following the incident, Collazo took time off of work due to emotional distress. See Docket No. 17, ¶ 10.

On February 11, 2003, Collazo wrote a Report of Contact to Myriam Zayas ("Zayas") in which he described another incident with Rivera. See id. at ¶ 12. Collazo reported that Rivera held three meetings on February 6, 2003. His report indicated that during one meeting Rivera said, "if someone has grudges against me, they better wait for me outside at 4:30." Docket No. 10, ¶ 11. Collazo and two of his co-workers perceived this statement to be directed to Collazo because of the previous complaint he filed with the VA Police Service. See id.

On March 25, 2003, Collazo submitted another Report of Contact to Zayas in which he stated that he approached Rivera to discuss issues pertaining to the Dermatology Clinic. During the discussion, Collazo reported, Rivera stated that he did not want any more problems, called him a useless old man, told him he did not know how to resolve problems, and suggested that he should leave. See Docket No. 17, ¶ 13; Docket No. 10, ¶ 12. Antonio Tirado ("Tirado"), a former VA patient, witnessed the incident. Tirado heard Rivera call Collazo an old man and tell him that he

should leave. See Docket No. 17, ¶ 13.

The following month, Collazo filed another report with the VA Police Service regarding an incident with Rivera on April 16, 2003. On April 16, Rivera called Collazo to his office and handed him a memorandum from Angel Roman-Cruz ("Roman"), Assistant Medical Administrative Officer. The memorandum referenced and attached patient complaints issued against Collazo between January 3, 2003 and March 19, 2003. The complaints alleged violations of customer service standards and conduct. The memorandum also notified Collazo that he would be reassigned, effective immediately, to a non-patient processing work area. Rivera requested that Collazo sign the memorandum, but Collazo refused to do so until he reviewed the complaints. Collazo reported that Rivera threatened him when he refused to sign. See Docket No. 10, ¶¶ 13-16. Specifically, Collazo told a VA Police Officer that Rivera said, "what a shame it's not 4:30 to break your face you unhappy person ('infeliz')." Id. at ¶ 16, Exhibit 11. In a Voluntary Witness Statement completed at the request of the VA Police Officer, Rivera claimed that Collazo refused to sign the memorandum, became furious, hostile, rude and disrespectful, and threatened to go to the police and the Federal Bureau of Investigation. Rivera also stated that Collazo opened his office door and screamed that Rivera was threatening and harassing him. At that time, Rivera told Collazo to calm down and return to his work area. Collazo refused and stated he was going to the Security Office. See id. at ¶ 17. On April 25, 2003, Collazo filed an informal EEO harassment complaint regarding this incident. See Docket No. 17, ¶ 14; Docket No. 10, ¶ 23. He also responded to the patient complaints by submitting a memorandum directed to Zayas dated April 22, 2003 and two positive patient statements regarding his work. See Docket No. 17, ¶ 16.

On June 9, 2003, the VA Medical Center Director convened an Administrative Board of Investigation to investigate the patient complaints against Collazo at the request of Dr. Gerardo Fransceschi, former Associate Chief of Staff to the Ambulatory Care Service. See Docket No. 10, ¶ 18. While the Board investigated the complaints, Collazo was placed in a position with no patient contact. See id. at ¶ 13. The Board found no evidence of patient abuse. See Docket No. 17, ¶ 17. It did, however, conclude that Collazo had difficulties in listening and understanding customer specific situations, showing empathy and care, and asking appropriate questions to offer helpful

**Civil No. 05-1783 (GAG)**                5

responses to customer needs. See Docket No. 10, ¶ 20. In its Investigation Report, the Board recommended that Collazo be relocated to an area with minimal contact with the public and patients and employees with high risks of becoming violent. See id. In accordance with the recommendation, the VA reassigned Collazo to address correction and patient demographic duties in the Means Test area. See id. at ¶ 21-22.

On April 25, 2003, Collazo filed an informal harassment complaint with EEO counselor alleging that he suffered age discrimination when Rivera threatened him on April 16, 2003 and when the VA reassigned him to non-patient processing area. On June 11, 2003, he filed a formal EEO Complaint alleging the same.[1] The Equal Employment Opportunity Commission ("EEOC") eventually issued a decision in favor of the VA. On appeal, the EEOC Office of Federal Operations upheld the decision. See id. at ¶ 23. On July 14, 2005, at the age of 69, Collazo filed the instant complaint. See Docket No. 1, ¶ 5.

**III.   Settlement Agreement**

In his complaint, Collazo seeks relief in the form of a declaratory judgment that the VA violated the February 4, 1998 settlement agreement. The VA argues, in its memorandum in support of its motion for summary judgment, that the court lacks jurisdiction to grant such relief because Collazo failed to properly exhaust administrative remedies. Alternatively, the VA contends that the court should deny Collazo's request for declaratory relief because the VA fully complied with the agreement. The court need not address the VA's arguments because Collazo clearly abandons his request for declaratory relief in his memorandum in opposition to the VA's summary judgment motion. Specifically, he clarifies that his claim is limited to the hostile work environment he underwent while under Rivera's supervision. Any reference to the settlement agreement, Collazo explains, is made to illustrate his job history and how and when he became Rivera's subordinate. See Docket No. 18, p. 2. Therefore, the court will no longer consider Collazo's request for a

---

[1] On October 7, 2003, Collazo filed a second complaint alleging he was harassed when he was not allowed to perform his duties. See Docket No. 17, ¶ 24, Exhibit 10. The specific allegations included in this complaint and its resolution at the agency level are unknown to this court.

**Civil No. 05-1783 (GAG)**                    6

declaratory judgment regarding the Settlement Agreement.

**IV.   Hostile Work Environment**

While hostile work environment claims first arose in the gender discrimination context, the First Circuit has since recognized such claims for members of any protected class. See Rivera-Rodriguez v. Frito Lay Snacks Caribbean, 265 F.3d 15, 24-25 (1st Cir. 2001) (discussing hostile work environment claim under ADEA). To establish a *prima facie* case of age-based hostile work environment under the ADEA, Collazo must demonstrate that: 1) he is a member of a protected class; 2) that he was subjected to unwelcome ageist harassment; 3) the harassment was based on age; 4) the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; 5) the objectionable conduct was both objectively and subjectively offensive such that a reasonable person would find it hostile or abusive and the victim did in fact perceive it to be so; and 6) some basis for employer liability has been established. Reyes Vega v. Pepsi Cola P.R. Distrib. LLC, 371 F. Supp. 2d 21, 27 (D.P.R. 2005) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)).

The VA argues that Collazo fails to present sufficient evidence from which a reasonable person could infer that the alleged harassment was age-based or sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create a hostile work environment.

An employee alleging harassment must demonstrate that the abusive conduct was directed at him because of a protected characteristic; in this case, the protected characteristic is age. See Quiles-Quiles v. Henderson, 439 F.3d 1, 7-8 (1st Cir. 2006). The record indicates that Rivera made an age-related comment during only one of the four reported incidents. Specifically, during the March 23, 2003 encounter, Rivera called Collazo useless old man. Collazo also provides testimony from two co-workers that Rivera called him old man.[2]  Furthermore, he alleges that Rivera

---

[2] Collazo offers the testimony of two co-workers, Pantojas and Ayala, that Rivera called him old man on occasions other than the March 23, 2003 encounter. Neither Pantojas nor Ayala offers any testimony regarding when, where, or how often he or she witnessed Rivera mistreat Collazo or call him old man. See Docket No. 17, ¶¶ 10, 12, Exhibit 1, ¶¶ 5, 7 (Pantojas); Docket No. 17, ¶ 18, Exhibit 7, ¶ 15 (Ayala).

**Civil No. 05-1783 (GAG)** 7

constantly called him old man. With the exception of the March 23, 2003 incident, however, the record does not indicate when, where, or how often Rivera made such age-related comments. Moreover, none of the additional remarks and threats of which Collazo complains relate to his age. Absent additional evidence of age-based animus, the connection between Rivera's harassment and Collazo's age is speculation on Collazo's part. Although ill will unquestionably existed in Collazo's working environment, the evidence cannot support a conclusion that this ill will stemmed from Collazo's age. Thus, Collazo fails to satisfy the "age-based" prong of his *prima facie* case, and his claim must be dismissed.

Apart from the fact that only one incident involved an age-based comment, the record does not illustrate harassment that was sufficiently severe or pervasive to create an objectively intimidating, hostile, or offensive work environment. In order for Collazo's hostile work environment claim to succeed, he must show that Rivera's conduct was so severe or pervasive that it altered the terms or conditions of his employment. See Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 46-47 (1st Cir. 2003). There is no mathematically precise test used to determine whether a plaintiff has demonstrated sufficiently severe or pervasive harassment. See Pomales v. Celulares Telefónica, Inc., 447 F.3d 79, 83 (1st Cir. 2006) (citing Kosereis v. Rhode Island, 331 F3.d 207, 216 (1st Cir. 2003)). To assess whether a workplace is a hostile environment, the court must consider the totality of the circumstances. Factors the court should consider include "the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

In this case, the behavior in question does not rise to the level of severity or pervasiveness generally considered actionable. Taking all of the evidence in the light most favorable to Collazo, the record discloses that within one year and one months time the following occurred: Rivera called Collazo useless old man and old man; he used foul, aggressive language in the workplace; he threatened to harm Collazo off the Medical Center premises; he announced during a meeting that anyone with a problem with him should meet him outside; and he told Collazo he was lucky it wasn't 4:30 so that he could break his face. This conduct, while inappropriate and unprofessional,

**Civil No. 05-1783 (GAG)**                                8

is not sufficiently severe or pervasive to support a hostile work environment claim under the ADEA.  Therefore, Collazo has failed to meet his burden required to establish a valid hostile work environment claim, and accordingly, we must grant the VA's motion for summary judgment.

**V.     Conclusion**

For the aforementioned reasons, the court **GRANTS** the defendant's motion for summary and dismisses the plaintiff's claim with prejudice.  Judgment shall be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico this 20th day of September 2006.


                                                                        S/Gustavo A. Gelpí

                                                                        GUSTAVO A. GELPI
                                                                        United States District Judge